IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KATIE RODENKIRCH-KLEINDL, et al.,

        **Plaintiffs,**

v.                                         Civil Action No. 2:13-cv-26026

C. R. BARD, INC.,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER
*(Defendant's Motion for Summary Judgment)*

Pending before the court is defendant C. R. Bard's ("Bard") Motion for Partial Summary Judgment [ECF No. 44]. As set forth below, Bard's Motion for Summary Judgment is **GRANTED IN PART** with respect to the plaintiffs' claims for manufacturing defect, breach of implied warranty, breach of express warranty, and negligent inspection, packaging, marketing, and selling. Bard's Motion for Summary Judgment is **DENIED IN PART** with respect to the plaintiffs' strict liability and negligent failure to warn claims.

## I.  Background

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 58,000 cases currently pending, approximately 8,000 of

which are in the Bard MDL, MDL 2187. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order ("PTO") # 102, No. 2:12-md-2187 [ECF No. 729]. This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. Ms. Rodenkirch-Kleindl's case was selected as a Wave 1 case by the plaintiffs. PTO # 118, No. 2:12-md-2187 [ECF No. 841].

Ms. Rodenkirch-Kleindl was surgically implanted with the Align Urethral Support System (the "Align") by Dr. Kenneth Ostermann at the Beaver Dam Community Hospital in Beaver Dam, Wisconsin. Am. Short Form Compl. 4 [ECF No. 28]. As a result of complications allegedly caused by the Align, the plaintiffs bring the following claims against Bard: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breaches of express and implied warranties; loss of consortium; and punitive damages[1]. *Id.* at 5. In the instant motion, Bard moves for partial summary judgment on the grounds that the plaintiffs' claims are without evidentiary support. Bard's Mem. Supp. Mot. Summ. J. 1 ("Mem. in Supp.") [ECF No. 45].

---

[1] Bard also filed a Motion for Partial Summary Judgment on Punitive Damages Claims [ECF No. 46]. That motion is addressed in a separate order.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105

3

F.3d 188, 191 (4th Cir. 1997).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010).

If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, however, as the plaintiffs did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan.

4

17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Rodenkirch-Kleindl received the implantation surgery for the Align in Wisconsin. Thus, the choice-of-law principles of Wisconsin guide this court's choice-of-law analysis.

I find that these principles compel application of Wisconsin law. For tort claims, Wisconsin's choice of law methodology "begins with a presumption that the law of the forum applies unless 'nonforum contacts are of the greater significance.'" *Assembly Component Sys., Inc. v. Platinum Equity, L.L.C.*, No. 09-CV-778, 2010 WL 2719978, at *6 (E.D. Wis. July 7, 2010) (quoting *Glaeske v. Shaw*, 661 N.W.2d 420, 427 (Wis. App. 2003)). The methodology then "ends with an analysis of five 'choice influencing factors': predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law." *Id.* Here, given the presumption in favor of the law of the forum, and that there is no indication that any of the five factors would weigh against applying Wisconsin law, I find that the tort claims are governed by Wisconsin law.

## III.  Analysis

Bard argues that it is entitled to partial summary judgment because the plaintiffs lack evidentiary support on the following claims: failure to warn on both theories of negligence and strict liability, breach of express warranty, manufacturing

Case 2:16-cv-01720-JPS   Filed 12/06/16   Page 5 of 10   Document 199

defect on both theories of negligence and strict liability, breach of implied warranty, and negligent inspection, marketing, packaging and selling. The plaintiffs have agreed not to pursue claims for manufacturing defect, breach of express warranty, and breach of implied warranty. *See* Response 11 [ECF No. 109]. Accordingly, Bard's Motion on the plaintiffs' claims for manufacturing defect, under theories of strict liability and negligence, breach of express warranty, and breach of implied warranty are **GRANTED.** Below, I apply the summary judgment standard to each remaining claim.

### A. Failure to Warn

Under Wisconsin law, a manufacturer is strictly liable for design defect if the claimant establishes all of the following by a preponderance of the evidence:

> (a) That the product is defective because it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. . . . [;] (b) [t]hat the defective condition rendered the product unreasonably dangerous to persons or property[;] (c) [t]hat the defective condition existed at the time the product left the control of the manufacturer[;] (d) [t]hat the product reached the user or consumer without substantial change in the condition in which it was sold[; and] (e) [t]hat the defective condition was a cause of the claimant's damages.

Wis. Stat. § 895.047.

A product is defective for want of adequate instructions or warnings "only if the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe." Wis. Stat. § 895.047(1)(a). A plaintiff suing in strict liability must also prove that the

inadequate instructions or warnings were "a cause" of the plaintiff's damages. §
895.047(1)(e).

Bard asks the court to employ the learned intermediary doctrine in considering
the plaintiffs' failure to warn claims. The learned intermediary doctrine allows a
manufacturer "to fulfill its duty to warn about the known dangers arising from use of
its products and avoid liability for failure to warn by adequately warning the
physician," thus relieving manufacturers of prescription drugs and medical devices
of the duty to warn the patients directly about the product's dangerous propensities.
*Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 968 (E.D. Wis. 2009). If the
court applied the learned intermediary doctrine in this case, as Bard urges me to do,
Bard's liability on this claim would depend on whether it adequately warned the
implanting physician about the risks associated with the Align product. Whether it
directly warned the plaintiff would not matter.

The Wisconsin Supreme Court has not had the opportunity to decide whether
to adopt the learned intermediary rule, *see Forst*, 602 F. Supp. 2d at 968, and federal
courts applying Wisconsin law are split on the issue. Several federal courts have used
the rule without mentioning that the state supreme court has not yet expressly
adopted it. *See, e.g.*, *Menges v. Depuy Motech, Inc.*, 61 F. Supp. 2d 817, 830 (N.D. Ind.
1999) (applying Wisconsin law); *Lukaszewicz v. Ortho Pharm. Corp.*, 510 F. Supp.
961, 963, *amended*, 532 F. Supp. 211 (E.D. Wis. 1981) (recognizing that the learned
intermediary rule is a "general rule [of] the courts of this country"). More recent
decisions by federal courts, however, reach the opposite conclusion and decline to

7

apply the learned intermediary doctrine under Wisconsin law. *See Maynard v. Abbott Labs.*, No. 12-C-0939, 2013 WL 695817, at *5 (E.D. Wis. Feb. 26, 2013) ("Wisconsin does not apply the learned intermediary doctrine . . . ."); *Forst*, 602 F. Supp. 2d at 968 (declining to adopt the learned intermediary rule "without some indication that the state's highest court would apply the doctrine if given the opportunity to do so" (quotation marks omitted)); *Peters v. AstraZeneca, LP*, 417 F. Supp. 2d 1051, 1054 (W.D. Wis. 2006) (same).

I need not resolve this issue here. Regardless of whether Bard's duty to warn extended to the implanting physician or to the plaintiffs directly, the plaintiffs have presented evidence demonstrating genuine disputes of material fact with regard to whether an inadequate warning caused her injuries, as is required for both negligent and strict liability failure to warn claims under Wisconsin products liability law. *See* Wis. Stat. § 895.047(1)(e) (requiring a plaintiff to prove that "the defective condition was a cause" of her injuries). Likewise, genuine disputes of material fact exist with regard to whether Bard's warning was adequate. Therefore, Bard's Motion for Summary Judgment on the plaintiffs' strict liability and negligent failure to warn claims is **DENIED**.

### B. Negligence

Under Wisconsin law, a negligence action requires the proof of four elements: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Rockweit v. Senecal*, 541 N.W.2d 742, 747 (Wis. 1995). "The duty

8

of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act." *Id.* After it is shown that a duty of care was owed, "the plaintiff is simply required to prove that the defendant failed to exercise ordinary care and the act or omission complained of was the cause, in the legal sense, of the plaintiff's injury." *Greiten v. LaDow*, 235 N.W.2d 677, 685 (Wis. 1975).

Bard contends that the plaintiffs' claims for negligent inspection, packaging, marketing, and selling of the Align fail for lack of evidence. The plaintiffs, in response, argue that there is ample evidence that demonstrate Bard breached a duty to the plaintiffs and that there was resulting harm from this breach. The plaintiffs state that Bard was negligent in failing to include adequate warnings, failing to include appropriate instructions for use, exaggerating the benefits of the Align, and marketing and selling the Align without adequate testing. However, apart from reciting allegations that form the plaintiff's failure to warn and design defect claims, the plaintiffs do not offer any support that Bard breached a legal duty that caused the plaintiff's injuries in their "inspection, marketing, labeling, packaging, or selling" of the Align. Accordingly, Bard's Motion on these points is **GRANTED.**

## IV. Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion [ECF No. 44] is **GRANTED IN PART** with respect to the plaintiffs' claims for negligent inspection, packaging, marketing, and selling, manufacturing defect, breach of

implied warranty, and breach of express warranty. Bard's Motion is **DENIED IN PART** with respect to the plaintiffs' strict liability and negligent failure to warn claims.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 6, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE